UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DARRELL E. HILL,**

      **Plaintiff,**

  v.                       **Civil Action 2:20-cv-2270**
                              **Judge Michael H. Watson**
**COMMISSIONER OF SOCIAL**     **Magistrate Judge Chelsey M. Vascura**
**SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Darrell E. Hill ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Supplemental Security Income benefits. This matter is before the Court on Plaintiff's Motion to Remand (ECF No. 23), the Commissioner's Memorandum in Opposition (ECF No. 26), Plaintiff's Reply Memorandum (ECF No. 27), and the administrative record (ECF No. 15). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

### I.    BACKGROUND

Plaintiff filed his application for Title XVI Supplemental Security Income Benefits on November 23, 2015, alleging that he had been disabled since November 30, 1995. (R. 212.) On April 13, 2018, following administrative denials of Plaintiff's application initially and on

reconsideration, Administrative Law Judge Christopher S. Tindale (the "ALJ") held a hearing. (*Id.* at 55–64.)  The ALJ continued that hearing to allow Plaintiff more time to find an attorney. (*Id.* at 58.)  The ALJ held a second hearing on February 1, 2019.  (*Id.* at 34–54.)  Plaintiff, represented by counsel, appeared and testified.  (*Id.*)  Vocational expert Karen Schneider (the "VE") also appeared and testified at the hearing.  (*Id.*)  On February 27, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 15–27.)  On March 10, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (*Id.* at 1–3.)  Plaintiff then timely commenced the instant action.  (ECF No. 1.)

After Plaintiff filed his Statement of Errors (ECF No. 18) and the Commissioner filed a Memorandum in Opposition (ECF No. 19), the Court discovered that the ALJ had relied, in part, on the medical records of an individual other than Plaintiff ("Other Patient") and brought the issue to the parties' attention.  *Cf. Hargrove v. Astrue*, No. CIV.A. 1:10-0061, 2010 WL 5071071, at *4 (M.D. Tenn. Dec. 7, 2010), *report and recommendation adopted*, No. 1:10-0061, 2011 WL 719651 (M.D. Tenn. Feb. 22, 2011) (*sua sponte* raising the issue of the claimant's submission of and the ALJ's reliance upon records that were from another patient).  Plaintiff then filed the subject Motion to Remand.  (ECF No. 23.)  Plaintiff contends that remand is required because the ALJ relied upon Other Patient's medical records to support his conclusions regarding Plaintiff's failure to satisfy the "Paragraph B criteria" in relation to the step-three Listing analysis and in crafting Plaintiff's residual functional capacity ("RFC") at step four. Plaintiff submits that it is not possible to know what conclusion the ALJ would have reached had the ALJ considered only Plaintiff's medical records, and therefore it is impossible for this Court to determine whether the ALJ's non-disability finding was supported by substantial evidence.

2

(*Id.* at 5.) The Commissioner, who had made multiple references to Other Patient's medical records in the Memorandum in Opposition to Plaintiff's Statement of Errors, contends the error by the ALJ was harmless, and filed a "corrected" certified administrative record on February 5, 2021, that omits the medical records pertaining to Other Patient. (ECF Nos. 21, 26.)

## II. THE ALJ'S DECISION

On February 22, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 15–27.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date. (*Id.* at 17.) At step two, the ALJ found that Plaintiff had the severe impairments of disorders of the spine, migraines, mood disorder, personality disorder, and post-traumatic stress disorder. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listings in 20 C.F.R. Part 404, Subpart P,

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

3

Appendix 1. (*Id.* at 18–20.) Of relevance to Plaintiff's Motion to Remand, the ALJ arrived at his step-three conclusion by relying in part on the medical records of Other Patient. (R. 18–19.) Specifically, when considering the "Paragraph B" criteria for various mental health Listings, the ALJ relied in part on Plaintiff's church attendance to find that Plaintiff had only moderate limitations in interacting with others and also in concentrating, persisting, or maintaining pace. (*Id.*) However, the records reflecting church attendance were actually those of Other Patient. (*See id.*)

> At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:
>
> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except for the following restrictions: He is limited to performing simple, routine tasks in a work environment free of fast production rate or pace work. He could have no contact with the public, occasional contact with supervisors and only occasional and superficial contact with coworkers, with superficial defined as no tandem tasks, no arbitration and no conflict resolution. He could tolerate only occasional changes in the work setting and only occasional decisionmaking.

(*Id.* at 20.) In explaining how he arrived at Plaintiff's RFC, the ALJ acknowledged that "the record documents extensive complaints and mental abnormalities." (*Id*. at 24.) The ALJ nevertheless concluded that the record did not support Plaintiff's allegations relating to the severity of his mental impairments, once again relying in part on a progress note from Other Patient documenting a "euthymic mood." (*See id*. ("In fact, records from March 2018 characterized the claimant's mood as 'euthymic.'" (internal citation to the record omitted).)

At step five of the sequential process, the ALJ, relying on the VE's testimony, found that Plaintiff could make a successful adjustment to other work that existed in significant numbers in the national economy. (*Id.* at 26–27.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.* at 27.)

4

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

5

## IV. ANALYSIS

"Generally, where medical records belonging to others are found in a claimant's file, the error is harmless so long as the ALJ recognized that the records were not attributable to the claimant, or substantial evidence still supports the ALJ's determination despite the consideration of third-party records." *Sims v. Soc. Sec. Comm'r*, No. 18-13108, 2019 WL 7169248, at *5–6 (E.D. Mich. Nov. 22, 2019), *report and recommendation adopted*, 2019 WL 7067123 (E.D. Mich. Dec. 23, 2019) (quoting *Wyatt v. Colvin*, 2015 WL 5012140, at *9 (S.D. W. Va. July 31, 2015) (collecting cases)).[2] "On the other hand, remand may be warranted where an ALJ meaningfully relies on a medical record belonging to a person other than the claimant and that reliance cannot be isolated from the ALJ's ultimate decision." *Wyatt*, 2015 WL 5012140, at *9. Consistently, in cases where the incorrect evidence upon which the ALJ relies supports the RFC limitations the ALJ opined such that the incorrect record's deletion would only bolster the ALJ's non-disability finding, courts have declined to remand. *See Sims*, No. 18-13108, 2019 WL 7169248, at *5–6.; *Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 458–9 (6th Cir. 2008). But where, as here, deletion of the erroneous records weakens support for the ALJ's non-disability finding and the court is unable discern whether the ALJ would have reached the same conclusion in the absence of the erroneous records, the ALJ's consideration of another patient's records requires remand. *See Hargrove*, 2011 WL 719651, at *4 (remanding where the ALJ relied, in

---

[2]Some trial courts have suggested that an ALJ's failure to recognize the erroneous inclusion of another patient's medical records casts doubt on the thoroughness of the ALJ's analysis as a whole. *See, e.g.*, *Salinas v. Comm'r of Soc. Sec.*, No. 12-11614, 2013 WL 3699781, at *8 (E.D. Mich. July 12, 2013) ("Indeed, how can there be any confidence whatsoever in a decision that is based on the wrong claimant? . . . [D]id [Plaintiff's treating counselor] record other clinical observations that were not provided to the ALJ? . . . How valid is an RFC that is based on the records of a different claimant?"); *see also Gannon v. Comm'r of Soc. Sec.*, No. 1:17CV02397, 2018 WL 4853331, at *19 (N.D. Ohio Oct. 5, 2018) (remanding where the ALJ provided the "same exact reasons" for discounting the opinion from a treating source as for discounting an opinion rendered for a patient other than the claimant that erroneously been included as part of the record, explaining that this raises "several concerns regarding the reasoning provided by the ALJ" for the opinion rendered by the source who had treated the claimant).

part, upon medical records from a patient other than the claimant to discount credibility and the ALJ was unable to determine whether the error was harmless).

In this case, remand is required because in crafting Plaintiff's RFC, the ALJ meaningfully relied upon Other Patient's records to conclude that the limitations attributable to Plaintiff's mental health impairments were not as severe as alleged and the undersigned is unable to determine whether the ALJ would have made the same determinations in the absence of the incorrect records.  As set forth above, the ALJ acknowledged that "the record documents extensive complaints and mental abnormalities."  (*Id*. at 24.)  But the ALJ nevertheless discounted Plaintiff's allegations concerning the severity of his mental impairments, reasoning that during "many examinations," Plaintiff presented with "unremarkable psychological clinical signs."  (*Id*.)  Although the ALJ included record citations to several progress notes, the ALJ found only one particular progress note worth discussion, and offered the following observation: "In fact, records from March 2018 characterized the claimant's mood as 'euthymic.'" (*See* R. 24 (quoting from Other Patient's records).  But this treatment record that the ALJ quoted and relied upon was Other Patient's, not Plaintiff's.  Moreover, as discussed above, in assessing the severity of Plaintiff's limitations relating to interacting with others and concentrating, persisting, or maintaining pace, the ALJ relied, in part, on Plaintiff's church attendance.  But again, it was Other Patient's, not Plaintiff's treatment records that reflected church attendance.

In summary, because the ALJ meaningfully relied upon treatment records from another patient to conclude that Plaintiff's mental-health limitations were not as severe as alleged and the undersigned cannot determine whether the ALJ would have made the same findings in the absence of the incorrect records, remand is required.  This finding obviates the need to analyze

7

and resolve Plaintiff's remaining contentions of error. Nevertheless, on remand, the ALJ may consider Plaintiff's remaining assignments of error if appropriate.

## V. DISPOSITION

Due to the error outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). The undersigned therefore **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE